Paul S. Padda, Esq. (NV Bar #10417)
Email: psp@paulpaddalaw.com
PAUL PADDA LAW, PLLC
4240 West Flamingo Road, Suite 220
Las Vegas, Nevada 89103
Tele: (702) 366-1888
Fax: (702) 366-1940
Web: paulpaddalaw.com

Attorney for the Plaintiffs

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| **SIMON SINGER, individually;** **RAO GARUDA, individually** **and as trustee of the GARUDA FAMILY** **ASSET PROTECTION TRUST,** | )))))  |
| Plaintiffs, | ) Case No. 2:16-cv-2526-KJD-GWF |
| v. | ) |
| **BRANDON STUERKE (also known as** **"Leroy Brandon Stuerke") an individual;** | )))) |
| Defendant. | ) |

## FIRST AMENDED PETITION TO COMPEL ARBITRATION

This is a civil action, brought by way of petition, seeking the issuance of an Order directing that the parties appear and participate in mandatory arbitration.

1. This Court possesses jurisdiction to entertain this matter pursuant to 9 U.S.C. § 4 which provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." This Court also possesses subject-matter jurisdiction pursuant to 28 U.S.C. § 1332

(diversity) and The Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et. seq. (federal question).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since "a substantial part of the events or omissions giving rise to the claim[s] occurred" in Nevada. More importantly, 9 U.S.C. § 4 provides that "[t]he hearing and proceedings, under such an agreement, shall be within the district in which the petition for an order directing such arbitration is filed." The agreement at issue in this case requires the application of Nevada law.

3. Plaintiff Simon Singer (an individual and resident of California) and the Garuda Family Asset Protection Trust (established in Ohio) are the majority members of the Tax Planning Institute, LLC ("TPI"), a limited liability company founded and organized under Nevada law. Plaintiff Rao Garuda (an individual and resident of Ohio) is the trustee of the Garuda Family Asset Protection Trust ("GFAPT"). TPI is registered to transact business with the Nevada Secretary of State as a domestic limited liability company. In establishing TPI as a domestic Nevada company, the majority of members of TPI intended all disputes relating to the company to be governed by Nevada law and subject to resolution in Nevada.

4. Defendant, Brandon Stuerke, also known formally as "Leroy Brandon Stuerke" (referred to herein as "BS"), is an adult male individual and the owner of "Automated Advisor." On information and belief, BS is a resident of Colorado.

5. TPI was formed in Nevada on or about June 18, 2015. TPI is a company that provides marketing and informational services to the financial services industry throughout the United States. TPI is managed by "Blue Ocean Trust1." The company has three members: the Garuda Family Asset Protection Trust ("Garuda"), Simon Singer ("Singer" – an individual) and BS (individually).

6. According to TPI's written Operating Agreement, the parties (i.e. members) "intend this Agreement to control, to the extent stated or fairly implied, the business and affairs

1  of the Company, including the Company's governance structure and the Company's dissolution,
2  winding up, and termination, **as well as the relations among the Company's Members** . . .."
3  *See* Exhibit A.  Section 2.02 of the TPI Operating Agreement specifically provides that "**[t]he**
4  **parties to this Agreement have reached an understanding concerning various aspects of**
5  **their business relationship with each other** . . . **[t]hey wish to use rights created by [Nevada]**
6  **statute to record and bind themselves to that understanding**."  The Articles further provide
7  "[t]he Manager has the authority or power to take any action he or she deems necessary for the
8  benefit of the Company."  Finally, the Articles provide that "all breaches of [the Articles] are
9  subject to specific enforcement, without prejudice to the right to seek damages or other
10 remedies."

11         7.      According to the Articles, '[t]his Agreement and any questions or other matter
12 related to or arising from this Agreement will be governed by the laws of the State of Nevada."
13 Defendant BS executed this Agreement and in so doing acknowledged that he understood "that
14 this Agreement contains legally binding provisions" and that he was provided an "opportunity to
15 consult with a lawyer" prior to executing/ratifying the Agreement.  According to the document
16 BS agreed to be bound by, the company's principal place of business was listed as 848 North
17 Rainbow, Suite 5195, Las Vegas, Nevada.  Section 17.08 of the Operating Agreement committed
18 BS to be bound by the jurisdiction of the courts of Nevada.

19         8.      Beginning in or around June 2015, BS engaged in a number of misrepresentations
20 intended to induce the other members of TPI, Garuda and Singer, to provide him with a
21 membership interest in the company.  Relying upon his misrepresentations, Garuda and Singer
22 agreed to permit BS a membership interest in TPI and by doing so, permitted him access to
23 valuable trade secrets developed by them.  However, contrary to what BS represented to Garuda
24 and Singer, he did not have great success in recruiting prior clientele, did not experience success
25 with another company known as "Advisors Edge Marketing," and did not have the industry

26                                                 3

success he proclaimed.  Had Garuda and Singer known the truth about BS and had he not engaged in affirmative misrepresentations of fact, he would never have been permitted a membership interest in TPI.  On information and belief, this is not the first time BS has been accused of failing to disclose material facts and/or engaging in deceitful conduct.  *See* Exhibit B.

9. Following the creation of TPI and during its existence, BS has engaged in various acts/omissions that are in direct conflict with his fiduciary obligations owed to TPI and Plaintiffs.  Both individually and cumulatively, these acts and/or omissions have harmed the financial, reputational, property and business interests of Plaintiffs.  For instance, since the formation of TPI, BS has overcharged for software services and engaged in misrepresentations in order to disguise his deceitful conduct all in an effort to enrich himself.  Further, BS has over exaggerated "staff expenses" in order to pocket monies/benefits for himself at both the expense of, and harm to, the Plaintiffs.  Finally, BS, to the significant detriment of Plaintiffs, has both engaged in misrepresentations and deceitful acts intended to steer business away from TPI towards his own company ("Automated Advisor") while also misappropriating valuable trade secrets developed by Plaintiffs.  While supposedly doing work for TPI and its clientele, BS has in fact engaged in conduct from the inception of the founding of the company intended to enrich himself only.

10. When confronted about his misrepresentations, deceitful conduct and acts undermining Plaintiffs' interests, BS has held hostage proprietary and intellectual property (trade secrets) developed by and belonging to Plaintiffs in an effort to silence any objections and/or challenges to his conduct.

11. While having perpetrated various fraudulent and deceitful acts harmful to the interests of Plaintiffs, BS has threatened legal action in direct contravention of Section 17.07 of the Operating Agreement which provides that "[a]ny dispute arising out of this Agreement shall be settled by [binding] arbitration."  Section 15.03 provides that "[i]f the Company resorts to litigation to remedy a breach of this Agreement by a Member or former Member and the

1  Company prevails in the litigation, in addition to any other remedies available to the Company
2  under this Agreement or by law the Company may collect its reasonable attorney fees and other
3  costs and expenses of litigation."

4      12.    Plaintiffs have sought to adjudicate their claims through arbitration but, to date,
5  BS has neglected and/or resisted participating in mandatory arbitration.  *See* Exhibit C.

6      13.    For their <u>first</u> claim for relief, Plaintiffs seek appropriate redress for breach of
7  contract.  Under Nevada common law, a breach of contract claim requires a plaintiff to show the
8  following: (i) plaintiff and defendant entered into a valid contract, (ii) plaintiff performed under
9  the contract, (iii) defendant breached the contract and (iv) plaintiff sustained damages as a result
10 of the breach.  In this case, Plaintiffs entered into a valid contract (Operating Agreement for TPI)
11 with BS.  Plaintiffs fulfilled all of their obligations under the Operating Agreement.  Whereas,
12 BS breached that contract when he misappropriated Plaintiffs' trade secrets, engaged in self-
13 dealing, made fraudulent misrepresentations and committed other deceitful acts intending to
14 enrich and benefit himself.  As a result of BS' actions, Plaintiffs have sustained damages.

15     14.    For their <u>second</u> claim for relief, Plaintiffs seek appropriate redress for breach of
16 fiduciary duty.  Under Nevada common law, a breach of fiduciary duty claim requires a plaintiff
17 to show the following: (i) defendant owed a fiduciary duty to plaintiff, (ii) defendant breached
18 that duty, and (iii) plaintiff sustained damages as a proximate cause of the breach.  In this case,
19 the Operating Agreement that BS executed and agreed to be bound by imposed upon him both
20 explicit and implicit fiduciary duties towards Plaintiffs.  In fact, Section 2.02 of the TPI
21 Operating Agreement specifically provides that "[t]he parties to this Agreement have reached an
22 understanding concerning various aspects of their business relationship with each other . . . [t]hey
23 wish to use rights created by [Nevada] statute to record and bind themselves to that under-
24 standing."  BS breached that duty when he misappropriated Plaintiffs' trade secrets, engaged in
25 self-dealing, made fraudulent misrepresentations and committed other deceitful acts intending to

26     5

enrich and benefit himself.  At the time BS committed these acts, it was forseeable that Plaintiffs would be harmed and in fact they were and sustained damages as a result.

15. For their third claim for relief, Plaintiffs seek appropriate redress for tortious breach of contract.  Under Nevada common law, a tortious breach of contract claim requires a plaintiff to show the following: (i) plaintiff and defendant entered into a valid contract, (ii) defendant owed a duty of good faith to plaintiff arising from the contract, (iii) a special element of reliance or fiduciary duty existed between plaintiff and defendant where defendant was in a superior or entrusted position, (iv) defendant breached the duty of good faith by engaging in misconduct, and (v) plaintiff sustained damages as a result of the breach.  In this case, Plaintiffs entered into a valid contract (Operating Agreement for TPI) with BS.  Defendant BS owed a duty of good faith to plaintiff under the express terms of the Agreement.  In fact, under the plain language of the Agreement, BS was in an entrusted position.  He breached that duty by misappropriating Plaintiffs' trade secrets, engaging in self-dealing, making fraudulent misrepresentations and committing other deceitful acts intending to enrich and benefit himself.  As a result of BS' actions, Plaintiffs have sustained damages.

16. For their fourth claim for relief, Plaintiffs seek appropriate redress for breach of the implied covenant of good faith and fair dealing.  Under Nevada common law, a breach of contract claim based upon violation of the implied covenant of good faith and fair dealing requires a plaintiff to show the following: (i) plaintiff and defendant were parties to a contract, (ii) defendant owed a duty of good faith to plaintiff, (iii) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract and (iv) plaintiff's justified expectations were thus denied.  In this case, Plaintiffs and BS were parties to a contract – the Operating Agreement.  BS clearly owed a duty of good faith to Plaintiffs under the express language of the Agreement.  Defendant breached that duty by engaging in deceitful acts, including misappropriating Plaintiffs' trade secrets.  Plaintiffs' justified expectations were clearly

6

denied.

17.     For their <u>fifth</u> claim for relief, Plaintiffs seek appropriate redress for constructive fraud.  Under Nevada common law, a constructive fraud claim requires a plaintiff to show the following: (i) defendant owed a legal or equitable duty to plaintiff arising from a fiduciary or confidential relationship and (ii) defendant breached that duty by misrepresnting or concealing a material fact and (iii) plaintiff sustained damages due to defendant's breach.  In this case, BS clearly owed Plaintiffs a legal duty arising from his fiduciary relationship with them as a fellow member of TPI.  BS breached that duty by concealing important and material facts from Plaintiffs.  Plaintiffs sustained damages due to Defendant's breach.

18.     For their <u>sixth</u> claim for relief, Plaintiffs seek appropriate redress for fraudulent misrepresentations.  Under Nevada law, a plaintiff must prove (i) defendant made a false representation, (ii) that defendant knew or believed his representations were false, (iii) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentations, (iv) plaintiff justifiably relied upon defendant's representations and (v) plaintiff sustained damages.  In this case, and in order to induce Plaintiffs to offer him a membership interest in TPI, BS misrepresented both his abilities and his professional/business record.  Indeed, contrary to what BS represented to Garuda and Singer, he did not have great success in recruiting prior clientele, did not experience success with another company known as "Advisors Edge Marketing," and did not have the industry success he proclaimed.  Had Garuda and Singer known the truth about BS and had he not engaged in affirmative misrepresentations of fact, he would never have been permitted a membership interest in TPI.  On information and belief, this is not the first time BS has been accused of failing to disclose material facts and/or engaging in deceitful conduct.  *See* Exhibit B.

19.     For their <u>seventh</u> claim for relief, Plaintiffs seek appropriate redress under The Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et. seq*., for misappropriation of trade

7

secrets. Under this federal law, a plaintiff must simply prove defendant acquired a trade secret knowing he acquired it improperly or, alternatively, used a trade secret of another without consent. Here, Singer and Garuda developed a number of trade secrets that made TPI a success and industry leader. BS improperly utilized the techniques, methods, processes, procedures and programs developed by Plaintiffs during the administration of TPI (for marketing to the financial services industry) for his own economic benefit without the consent of Plaintiffs. Indeed, BS used Plaintiffs' own trade secrets to compete against Plaintiffs and TPI in order to enrich himself.

20. Wherefore, in light of the foregoing, Plaintiffs respectfully request that pursuant to 9 U.S.C. § 4 the Court issue an Order compelling arbitration in accordance with the terms of the written agreement at issue here.

Respectfully submitted,

/s/ Paul S. Padda
_____
Paul S. Padda, Esq.

Attorney for Plaintiff

Dated: January 12, 2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 12, 2017, a copy of the foregoing document was served via the Court's electronic filing system (CM/ECF) upon all counsel and parties of record in this matter.

/s/ Paul S. Padda
_____
Paul S. Padda, Esq