# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SIMON SINGER, individually;
RAO GARUDA, individually
and as trustee of the GARUDA FAMILY
ASSET PROTECTION TRUST,

    Plaintiffs,

v.

BRANDON STUERKE (also known as
"Leroy Brandon Stuerke") an individual,

    Defendant.

Case No. 2:16-cv-02526-KJD-GWF

**ORDER**

Presently before the Court is Defendant Brandon Stuerke's Motion to Dismiss the First Amended Petition (#6/16). Plaintiffs filed a response in opposition (#20), to which Stuerke replied (#25).

I. Background

On June 18, 2015, the Garuda Family Asset Protection Trust ("Garuda") and Simon Singer ("Singer" – an individual) (collectively "Petitioners") and the Defendant, Leroy Brandon Stuerke, formed a financial services company, Tax Planning Institute, LLC ("TPI"), in Nevada, intended to do business throughout the United States. TPI's Operating Agreement ("Agreement") defined TPI governance, including dispute resolution and forum selection.

The Petitioners allege that after TPI's creation, Stuerke used TPI trade secret customer information for a competing business. In responding to the Petitioners' request to compel arbitration, Stuerke has denied the validity of the alleged trade secrets, challenged the Court's subject matter jurisdiction over the controversy, and challenged the Court's personal jurisdiction over him. Petitioners seek to compel Stuerke to submit to binding arbitration of the dispute between the founding members of TPI.

II.  Discussion

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), determines the arbitrability of disputes between parties to an agreement. Agreements to arbitrate in "a contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. In order for a dispute to be arbitrable under the FAA (1) there must exist a valid agreement to arbitrate between the parties; and (2) the dispute in question must fall within the scope of that arbitration agreement. Chiron Corp. v. Ortho Diagnostic Sys., 207 F. 3d 1126, 1130 (9th Cir. 2000). When deciding whether parties agreed to arbitrate, courts should apply ordinary state-law principles that govern the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Arbitration agreements must be enforced according to their terms. Volt Information Sciences, Inc. v. Board of Trustees of Leland Sanford Jr., Univ., 489 U.S. 468, 478, (1989).  The court should determine if the dispute falls within the scope of the arbitration agreement, unless the arbitration agreement clearly and unmistakably delegates that to the arbitrator. See First Options, 514 U.S. at 938. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Both the FAA and the Uniform Arbitration Act ("UAA")  permit parties to file petitions to compel arbitration without the need for an ongoing court action between the parties.  9 U.S.C. § 4; UAA § 2(a).  Significantly, however, the FAA does not independently create subject matter

jurisdiction and, absent a federal question or diversity jurisdiction, the petition cannot be filed in federal court even when the transaction involves interstate commerce. Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283, 1287–88 (9th Cir. 1984). If the arbitration agreement contains a forum selection clause, generally only the district court in the selected forum can issue an order compelling arbitration. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323 (7th Cir. 1995).

To evaluate the Petition to Compel Arbitration under the FAA, the Court must analyze if (1) there exists a valid agreement to arbitrate between the parties; (2) the dispute is within the scope of that arbitration agreement; and (3) the Court would have subject matter jurisdiction over the controversy, if not for the agreement of the parties to submit to arbitration. 9 U.S.C. § 4.

A. The parties have a valid agreement to arbitrate

Neither party disputes that the TPI Agreement is valid. Both parties have cited its provisions and language in their briefs and each has implied that they consider themselves collectively bound by the terms of the agreement. Within the Agreement is a clause requiring arbitration. "Any dispute arising out of this Agreement shall be settled by arbitration." TPI Agreement § 17.07, ECF 12-1 at 23.

B. TPI members agreed to arbitrate disputes among members

The scope of the Agreement covers disputes among members, including the issues brought before the Court. "The parties intend this Agreement to control . . . the business and affairs of the Company, including . . . the relations among the Company's Members . . . ." TPI Agreement § 2.02(b), ECF 12-1 at 3. "[A]ny disputes shall be resolved by a binding arbitration." TPI Agreement § 17.07, ECF 12-1 at 23. The Petitioners and Stuerke disagree about the trade-secret status of customer contact information, the appropriate uses of such information, and the obligations of TPI members to TPI. These disagreements are within the scope of the Agreement and subject to arbitration.

///

### C. Stuerke is subject to personal jurisdiction in Nevada Courts by contractual agreement

Stuerke has objected to the Court's personal jurisdiction, therefore we consider whether Stuerke is subject to the specific personal jurisdiction of Nevada courts. All the parties to the TPI Agreement consented to the jurisdiction of Nevada courts. "Each Member expressly agrees to the jurisdiction" of the courts in their home state, and to the courts in the principal place of business. TPI Agreement § 17.08, ECF 12-1 at 23. TPI's principal place of business is Nevada. TPI Agreement § 2.01, ECF 12-1 at 3.

The signers of the TPI Agreement availed themselves of the laws and benefits of Nevada, subjecting themselves to that forum. "For a State to exercise jurisdiction consistent with due process, that relationship must arise out of contacts that the 'defendant himself' creates with the forum." Walden v. Fiore, 134 S. Ct. 1115, 1118 (2014) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). In Burger King, a franchisee was subject to personal jurisdiction in the home state of the parent company, even though he had not physically been there. Burger King, 471 U.S. at 476, 478.

> [W]here the defendant "deliberately" has . . . created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Id. at 475–76 (internal citations omitted).

Stuerke is a principal member of a company whose "principal place of business" is in Nevada. Additionally, his TPI Agreement obligates him to jurisdiction in Nevada courts. Stuerke is subject to specific personal jurisdiction in Nevada courts for matters related to TPI.

### D. The Court lacks subject matter jurisdiction

Without subject matter jurisdiction over the controversy, a court cannot consider a petition to compel arbitration. 9 U.S.C. § 4; Vaden v. Discover Bank, 556 U.S. 49, 62–63 (2009). The court should "determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying

substantive controversy." Id. at 62. The Petitioners assert both federal question and diversity jurisdiction.

        1. Federal question jurisdiction

Petitioners' seventh claim for relief seeks redress under the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836, which provides a private right of action to the owner of a trade secret used in interstate commerce for its misappropriation. 18 U.S.C.A. § 1836(b)(1) (Westlaw through Pub. L. No. 115-30. Also includes Pub. L. Nos. 115-32 and 115-34). Petitioners have asserted ownership of trade secrets with economic value, which by presumption are used in interstate commerce. However, trade secrets require "reasonable measures to keep such information secret," which Petitioners have not alleged. 18 U.S.C.A. § 1839(3)(a). "Intending to keep information a secret is not enough. Reasonable measures can include . . . using confidentiality agreements or verbal instructions for confidentiality." Michelle Evans, Plausibility Under the Defend Trade Secrets Act, 16 J. Marshall Rev. Intell. Prop. L. 188, 198 (2017) (footnotes omitted).

Petitioners have not alleged provisions in the TPI Agreement, nor in external written or oral agreements, that serve to protect proprietary trade secrets from improper disclosure. To allege that trade secrets were misappropriated, requires factual assertions that disclosure or use of a trade secret was without consent by a person who knew of "a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C.A. § 1839(5)(B)(ii)(II) . On the basis of this deficiency, the Petitioners' seventh claim for relief is invalid because is fails to allege reasonable measures to keep the information secret.

As an additional consideration, the Court must consider if the misappropriation of the trade secrets post dates the effective date of the DTSA, May 11, 2016. As Stuerke's Motion to Dismiss points out, the Petitioners do not identify a specific time frame in which the alleged misappropriation took place. Significantly however, although Stuerke challenges the validity of the trade secrets, the timing of their alleged misappropriation, and the Court's jurisdiction to order the relief sought, Stuerke does not specifically deny engaging in the behavior the Petitioners allege constitutes

misappropriation. The DTSA applies to "any misappropriation . . . for which any act occurs" after the effective date. Pub. L. No. 114-153, § 2(e); see also Adams Arms, LLC v. Unified Weapon Sys., No. 8:16-cv-1503-T-33AEP, 2016 U.S. Dist. LEXIS 132201, at *17 (M.D. Fla. Sep. 27, 2016) ("when an 'act' occurs after the effective date [of the DTSA], a partial recovery is available on a misappropriation claim."). Petitioners allege an ongoing misappropriation of trade secrets that Stuerke does not deny. The timing of the alleged misappropriation does not provide independent grounds for invalidating the seventh claim for relief, based on the allegations and information before the Court.

The Petitioners have presented a controversy regarding trade secret misappropriation, that if properly pleaded, would establish subject matter jurisdiction. A key element of the DTSA claim is missing from the allegations: Stuerke's specific obligations regarding restricted use and disclosure of the trade secrets. Failure to file a second amended petition within fourteen (14) days of this order will result in final dismissal of the Petition.

2. Diversity jurisdiction

Since federal question jurisdiction does not arise due to the inadequacy of Petitioners' seventh claim, the Court must consider whether diversity jurisdiction exists based on the state law claims alleged in claims one through six. In considering a petition to compel arbitration, a court may look through to the underlying controversy and is not restricted to the face of the petition. Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 383 (2d Cir. 2016); See also Vaden, 556 U.S. at 65.

The state law claims in the Petition lack facts sufficient to state a claim. Petitioners have not alleged contractual terms, statutory requirements, or specific fiduciary duties with corresponding factual allegations that Stuerke's behavior breached those duties. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Claim six alleges actions that predate the Agreement to arbitrate, and thus claim six does not have a

basis for the Court to compel arbitration. The Court cannot compel these claims to arbitration because they lack sufficient substance to state a claim over which the Court has subject matter jurisdiction.

The deficiencies in Petitioners' pleading prevent the Court's subject matter jurisdiction under either federal question or diversity jurisdiction.[1]

III. Motion to strike

In Stuerke's Motion to Dismiss (#6), Stuerke requested the Court strike improper allegations in the Petition. The presence in the Petition of public documents regarding Stuerke's past actions in Ohio do not warrant an order to strike. However, the Court notes that these documents, and allegations, are irrelevant to Petitioners' Motion to Compel Arbitration. Therefore, if Petitioners file an amended Petition, they should not include those documents and allegations.

IV. Conclusion

**IT IS HEREBY ORDERED** that Stuerke's Motion to Dismiss First Amended Petition (#6/16) is **GRANTED with leave to amend**.

**IT IS FURTHER ORDERED** that Petitioners file a Second Amended Petition within fourteen (14) days of the entry of this order. Failure to do so will result in final dismissal of the Petition.

DATED this 14th day of June 2017.

Kent J. Dawson
United States District Judge

---

[1] Stuerke argues that the petitioners' claims are derivative and require TPI be joined in this case. State law determines if an action is direct or derivative. Sax v. World Wide Press, Inc., 809 F.2d 610, 613 (9th Cir. 1987). If Nevada law determined Petitioners' action was derivative, and that TPI was a necessary party, the Court would not dismiss the action without allowing Petitioners to join TPI to the action. Fed. R. Civ. P. 17(a)(3). Such a situation would not affect federal question jurisdiction. Joining TPI would affect diversity jurisdiction, but it is unnecessary to reach this issue.